1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

10

# SOUTHERN DISTRICT OF CALIFORNIA

11

12 NGHIEM DANG,

13                                   Petitioner,

14

15             vs.

16

17

18

19 L. S. McEWAN, Warden,

20                                   Respondent.

21

22

Civil No. 11cv1955-BTM (KSC)

**ORDER:**

**(1)  ADOPTING IN PART AS MODIFIED AND DECLINING TO ADOPT IN PART THE FINDINGS AND CONCLUSIONS OF UNITED STATES MAGISTRATE JUDGE;**

**(2)  SUSTAINING IN PART AND OVERRULING IN PART PETITIONER'S OBJECTIONS;**

**(3)  DENYING PETITION FOR A WRIT OF HABEAS CORPUS; and**

**(4)  ISSUING A CERTIFICATE OF APPEALABILITY LIMITED TO CLAIM 1 OF THE PETITION**

23          Nghiem Dang (hereinafter "Petitioner"), is a California prisoner proceeding pro se with

24 a Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  He

25 alleges here, as he did in state court, that his state and federal Constitutional rights were violated

26 due to an inadequate inquiry into possible juror bias (Claim 1), ineffective assistance of trial

27 counsel for pursuing an untenable defense (Claim 2), failure to give a unanimity jury instruction

28 (Claim 3), and because he is actually innocent (Claim 4).  (Pet. at 6-9; Memo. P&A Supp. Pet.

["Pet. Mem."] at 23-49.[1])  United States Magistrate Judge Karen S. Crawford has filed a Report and Recommendation ("R&R") which recommends the Petition be denied because: (1) the state court's adjudication of Claims 1-3, with the exception of the ineffective assistance of counsel and the cumulative error aspects of Claim 1, is neither contrary to, nor involves an unreasonable application of, clearly established federal law; (2) Petitioner has not demonstrated cumulative error with respect to Claim 1 nor shown he was prejudiced by counsel's actions, and (3) the actual innocence claim (Claim 4) is not cognizable on federal habeas.  (ECF No. 23.)

Petitioner has filed Objections to the R&R, specifically with respect to Claim 1 but without conceding his other claims, and requests a Certificate of Appealability.  (ECF No. 27.) After the Objections were filed, the Court found that Respondent had misread the record with respect to the Juror No. 15 aspect of Claim 1, that the R&R had erroneously relied on that misreading, and directed Respondent to amend the Answer.  (ECF No. 31.)  Respondent filed an Amended Answer and Petitioner filed an amended Traverse.  (ECF Nos. 38-40.)

The Court has reviewed the R&R and the Objections thereto pursuant to 28 U.S.C. § 636(b)(1), which provides that: "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

**1.    Claim 1**

Petitioner alleges in Claim 1 that his state and federal constitutional rights to a jury composed of unbiased and impartial jurors, and to a trial judge, defense counsel and appellate counsel vigilant in protecting those rights, were violated, individually or cumulatively, because: (1) an inquiry was not made after Juror Nos. 3 and 12 openly displayed and voiced "their frustrations/animosity towards the trial process," and after Juror No. 15 indicated she possibly recognized the victim's father; (2) Juror 4 was allowed to remain as a juror even though she recognized and was familiar with nearly all of the prosecution's peace officer witnesses and

---

[1]  When citing to documents filed with the Court's Electronic Case Filing ("ECF") system, the Court will refer to the pages assigned by that system.

1    failed to disclose that knowledge on voir dire; and (3) those claims, other than the Juror No. 12

2    aspect, were not raised on appeal.  (Pet. Mem. at 23-30.)  Petitioner requests here, as he did in

3    state court, that he be provided with a complete transcript of the voir dire proceedings in order

4    to fully and fairly develop the factual basis of Claim 1.[2]  (Id. at 30-31.)

5         Respondent argues that the state appellate court's reasoned opinion denying the Juror No.

6    12 aspect of Claim 1 is consistent with clearly established federal law.  (Ans. Mem. at 10-12.)

7    Respondent contends that Petitioner cannot establish that the state supreme court's silent denial

8    of the remaining aspects of Claim 1 involved an objectively unreasonable application of clearly

9    established federal law, because: (1) Juror No. 3's actions did not evince bias or trigger a need

10   to inquire; (2) the trial court conducted an adequate inquiry when it came to the court's attention

11   that Juror No. 4 recognized several peace officers on the witness list; and (3) Juror No. 15 was

12   dismissed during voir dire and was not on the empaneled jury.  (Id. at 12-15.)

13        The Magistrate Judge found that the state court's adjudication of Claim 1, other than the

14   cumulative error and ineffective assistance of counsel aspects, was neither contrary to, nor

15   involved an unreasonable application of, clearly established federal law, because no inquiry was

16   necessary regarding Juror Nos. 3, 4 and 15, as there was nothing to indicate bias, and the injury

17   of Juror No. 12 was adequate and revealed no bias.  (R&R at 7-14.)  The Magistrate Judge found

18   that Petitioner did not demonstrate a federal due process violation with respect to cumulative

19   error because there were no jury errors to accumulate, and did not demonstrate ineffective

20   assistance of counsel because "there was no failure by the trial court or petitioner's counsel to

21   take appropriate action with respect to potential bias as to Juror Nos. 3, 4, 12, and 15, since there

22   is nothing to suggest actual prejudice could be shown."  (Id. at 14.)

23        Petitioner objects, arguing that the R&R "minimizes and overlooks facts, allegations, and

24   argument," including Juror No. 15's acquaintance with the victim's father, the trial judge's

25   sharply worded comments regarding the frustration and animosity exhibited by the jurors, Juror

26

27        [2] Respondent has lodged the transcript of the beginning of voir dire where the jurors were asked
     as a group whether they recognized any witness on the witness list. (RT 3241-77.)  The individual juror
28   voir dire was recorded but not transcribed.  (RT 3277, 3611, 3613, 3620.)  Respondent contends those
     transcripts are "unavailable" because "they are not part of the appellate record."  (Ans. Mem. at 15.)

No. 1's dismissal for drinking alcohol during a lunch break, the expressions of open animosity and disdain by Juror Nos. 3 and 12, and Juror No. 4's acquaintance with nearly all of the prosecution's peace officer witnesses and her lack of truthfulness on voir dire in that regard. (Obj. at 1-6.)  He objects to the failure of the R&R to address his ineffective assistance of counsel claims, which allege trial counsel should have insisted on questioning the jurors, and appellate counsel should have raised these claims on appeal. (Id. at 1-3, 6.)

### a) Juror No. 12

After the close of trial testimony, and just prior to jury instruction and closing argument, the jurors were in the hallway outside the courtroom waiting to be brought in; they had been told to be present at 9:30 a.m., and at 9:45 a.m. the court clerk informed them that it would be another 15 minutes before the court was ready. (Lodgment No. 9, People v. Dang, No. D053687, slip op. at 13-14 (Cal.App.Ct. July 14, 2010).)  The clerk reported to the court that Juror No. 12 had asked the clerk at that time, "are they doing anything productive in the courtroom?", which most of the other jurors overheard. (Id. at 14.)  The trial judge and the attorneys were discussing jury instructions, and, without having called the jury in, decided at 11:21 a.m. to excuse the jury until 1:00 p.m. (Lodgment No. 1, Clerk's Tr. ["CT"] at 660.)  The clerk went into the hallway about 11:30 a.m. and told the jury they were excused until 1:00 p.m., at which time Juror No. 12 made a comment to the clerk, which was "probably heard by at least some of the other jurors," that "he was rather upset or perplexed about how three highly-educated individuals, meaning the [trial judge, prosecutor and defense counsel], could be so incompetent." (Lodgment No. 9, People v. Dang, No. D053687, slip op. at 14.)  The trial judge informed the attorneys of Juror No. 12's comments, and said: "it's been pretty apparent from his demeanor during the trial that he thinks this is a waste of time and he has better things to do." (Id.)  The judge then stated:

> So I just wanted you to be advised.  I'm not suggesting – I suppose that comes as any surprise that jurors could be in that frame of mind now, but he was the one who verbalized that.  So I don't know what, if anything, you suggest we do about that at this point.  I want you to be advised so you have that information.

(Lodgment No. 2, Reporter's Tr. ["RT"] at 7209.)  No party asked for an inquiry.

///

To place those comments in context, and to address Petitioner's contention that the trial judge repeatedly warned the attorneys they were trying the patience of the jurors, it is necessary to briefly review the record regarding the trial delays.  The trial judge told the jurors to expect the trial to last about 8-10 days (RT 3269-70), but it lasted 25 days.  (CT 625-63.)  Jury voir dire began on April 8 and took three days; evidence was presented on 10 court days from April 11 to April 30, with 4 dark court days; the comments at issue were made May 1, and the verdicts were returned May 2.  (Id.)  The trial judge made several comments during trial regarding how the jurors were reacting to the trial delays.  On April 25, the seventh day of testimony and 18 days after jury selection began, the trial judge told the attorneys:

> I don't know if you guys care, but you're driving this jury crazy.  Geez, I think they think we don't know what the hell we're doing here.  That's not helpful to anybody to have the jury figure these people don't know what they're doing.  They're making things up as we go along.  It's not helpful for the process.

(RT 6466.)

Later that day, in connection to Juror No. 5's request to be excused due to her employer's refusal to continue paying her, the trial judge told the attorneys:

> Remember, she told us he was going only to be paid for 10 days.  And I think we, ah – probably at the time reasonably thought it was not going to be a problem.  Or that she might have to see if she could prevail upon the bank to pay her for maybe one extra day.  [¶]  Today is her last day to be paid, she advised the bailiff, and the bank had indicated that's it.  They apparently are disgusted with the way the court has been proceeding.  They think we're wasting time down here, so they're not willing to pay her any extra.

(RT 6502.)

On the last day of testimony, April 30, the trial judge told the attorneys:

> All right.  So everybody's on notice, I think I have implicitly, and on a couple of instances explicitly, made it clear to you that I think we're getting repetitious.  We're getting cumulative and sort of trivializing the process here.  And you are trying the patience of the court, and I believe my perception of the jury is that you're also trying the patience of the jury.

(RT 7098.)

Petitioner alleges that: (1) his due process and jury trial rights were violated by the failure of the trial court to conduct a hearing regarding Juror No. 12's comments in order determine the extent of any bias, or whether the impartiality of the other jurors was affected by the comments;

11cv1955

(2) his trial counsel was ineffective for failing to request or insist on such a hearing, and (3) his appellate counsel was ineffective for failing to raise those claims on appeal. (Pet. Mem. at 23-27, 30.)

The last reasoned opinion of the state court with respect to the trial court's failure to conduct an inquiry into Juror No. 12's comments, to which this Court must apply the standards of 28 U.S.C. § 2254(d), is the appellate court opinion on direct appeal.  That court found that an inquiry was not necessary into Juror No. 12's comments because they merely evinced a "negative attitude toward the progress of the trial," and "likely reflected a degree of impatience and, possibly, an interest in what matters were being discussed by the court and counsel in the jurors' absence . . . [and] . . . may have reflected his momentary exasperation with the proceedings." (Id. at 15-18.)  The appellate court found that the record did "not establish his comments were the result of any improper or external inference, any improper bias towards Dang or his counsel," and did not support a reasonable inference that the juror might not be able to remain impartial, carefully deliberate, or follow the court's instructions. (Id. at 17-18.)  The court concluded: "Because the comments by juror No. 12 could not support a reasonable inference that there might be good cause for his removal, the trial court did not err by not questioning him and the other jurors who may have heard those comments."  (Id. at 18.)

The Magistrate Judge found that the state appellate court's denial of the claim was consistent with clearly established federal law which provides that a hearing in which the defendant has an opportunity to prove juror bias is only required when the trial court is presented with a substantial question of juror bias, which it was not.  (R&R at 7-8, 11-13.)  Petitioner objects to that finding, contending that the state appellate court's finding that the comments may have reflected a "momentary exasperation with the proceedings" was belied by the trial judge's statement that Juror No. 12 had a negative demeanor throughout the trial, and that the R&R overlooked Petitioner's argument that he was prejudiced by defense counsel's failure to request a hearing with respect to the comments.  (Obj. at 6.)  Petitioner points out that only the "gist" or "essence" of Juror No. 12's comments were put on the record, and a hearing should have been held to determine exactly what was said.  (Pet.'s Reply [ECF No. 40] at 8.)

Clearly established federal law provides that a criminal defendant has a Sixth Amendment right to a "fair trial by a panel of impartial, 'indifferent' jurors." <u>Irwin v. Dowd</u>, 366 U.S. 717, 722 (1961). "If only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel." <u>United States v. Hendrix</u>, 549 F.2d 1225, 1227 (9th Cir. 1977). The Ninth Circuit has stated that:

> A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances. An informal in camera hearing may be adequate for this purpose; due process requires only that all parties be represented, and that the investigation be reasonably calculated to resolve the doubts raised about the juror's impartiality. So long as the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness.

<u>Dyer v. Calderon</u>, 151 F.3d 970, 974-75 (9th Cir. 1998) (en banc) (internal citations omitted).

The trial judge, consistent with clearly established federal law, informed the parties of Juror No. 12's comments and his impression of the juror's reason for making the comments, and invited the attorneys to suggest a course of action, but no party requested an inquiry of any of the jurors. The trial judge was in a unique position to observe the jurors and determine that Juror No. 12's comments were expressions of impatience with the trial process rather than bias toward Petitioner. <u>See</u> <u>Miller v. Fenton</u>, 474 U.S. 104, 114 (1985) (holding that a state trial judge is in a far superior position to assess juror basis than federal habeas judges). That determination is well supported by the record. The trial judge told the jurors to expect the trial to last about 8-10 days, but it lasted 25 days. Jury voir dire began on April 8 and the comments at issue were made May 1, one day before the verdicts were returned.

Petitioner argues that the delays and resultant frustration support a finding of bias. He points out that Juror No. 5 was excused on April 28 because her employer would no longer pay her for jury service, and that the delays drove Juror No. 1 to drink, as she was excused on May 1 during the final jury instructions for having consumed alcohol during the lunch break. (RT 6502, 7228-29.) However, the record supports the findings by the state trial and appellate courts that Juror No. 12's statements were expressions of impatience with the trial process which did not provide for an inference of bias against Petitioner. <u>See</u> <u>Fields v. Brown</u>, 503 F.3d 755, 767 (9th Cir. 2007) (holding that juror bias is defined as "the existence of a state of mind that leads

1   to an inference that the person will not act with entire impartiality.")  To the extent Petitioner

2   speculates that an inquiry might have revealed that Juror No. 12 believed his time was being

3   wasted based on an assessment of the evidence against Petitioner, which the state court found

4   to be "overwhelming," rather than fatigue from a trial which had lasted nearly three times as long

5   as the original estimate, and possibly triggered by a morning wasted waiting outside the

6   courtroom, the jurors were repeatedly instructed, prior to Juror No. 12's comments, not to form

7   or express any opinions or conclusions until the end of the trial.  (RT 4319, 4505, 5301, 5775-76,

8   6080, 6513, 6886, 7017.)  The Court must presume they followed that instruction.  See Francis

9   v. Franklin, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the

10  gravity of their task, attend closely the particular language of the trial court's instructions in a

11  criminal case and strive to understand, makes sense of, and follow the instructions given them.")

12  Deference to the state court finding is appropriate here because the trial judge brought Juror No.

13  12's comments to the attention of the parties, informed the parties of his own impression that the

14  comments were based on frustration with the delays in the trial process rather than bias, which

15  is clearly supported by the record, and invited comment regarding a proper course of action from

16  the parties, who at that time knew the jurors were upset regarding the delays, but neither defense

17  counsel, the prosecutor, nor the trial judge thought an inquiry was necessary in this instance.[3]

18  See Dyer, 151 F.3d at 975 ("So long as the fact-finding process is objective and reasonably

19  explores the issues presented, the state trial judge's findings based on that investigation are

20  entitled to a presumption of correctness."); see also Austad v. Risley, 761 F.2d 1348, 1350 (9th

21  Cir. 1985) ("The Supreme Court has clearly established that the determination of a juror's

22  partiality or bias is a factual determination to which section 2254(d)'s presumption of

23  correctness applies."), citing Patton v. Yount, 467 U.S. 1025, 1036 (1984).

24      Accordingly, habeas relief is not available because the state appellate court's adjudication

25  of this aspect of Claim 1 did not involve an objectively reasonable application of clearly

26  established federal law, and was not based on an unreasonable determination of the facts in light

27  _____

28      [3]  As discussed below, the trial judge, prosecutor and defense counsel all questioned Juror No.
    4 closely regarding potential bias and her ability to remain impartial when it came to light that she knew
    the prosecution's investigative officer.  (RT 4026-30.)

1  of the evidence presented in the state court proceedings.  See Lockyer v. Andrade, 538 U.S. 63,

2  75-76 (2003) ("[A] federal habeas court may not issue the writ simply because the court

3  concludes in its independent judgment that the relevant state-court decision applied clearly

4  established federal law erroneously or incorrectly. . . . Rather, that application must be

5  objectively unreasonable.") (internal citation omitted); Harrington v. Richter, 562 U.S. ___, 131

6  S.Ct. 770, 786 (2011) (noting that federal habeas relief functions as a "guard against extreme

7  malfunctions in the state criminal justice systems," and not simply as a means of error

8  correction), quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979).

9      The Court **OVERRULES** Petitioner's objections and **ADOPTS AS MODIFIED** the

10  finding of the Magistrate Judge that the state appellate court's denial of his claim that his federal

11  due process and jury trial rights were violated by the failure of the trial court to conduct an

12  inquiry regarding Juror No. 12's comments did not involve an objectively unreasonable

13  application of clearly established federal law.  That finding is modified to reflect that the Court

14  also finds the state court adjudication did not involve an unreasonable determination of the facts

15  in light of the evidence presented in the state court proceedings. Petitioner is not entitled to

16  expand the record to include the complete voir dire transcript because his stated need to do so,

17  in order to fully and fairly develop the factual basis of his claim, is (see Pet. Mem. at 30-31), as

18  it was in the state courts (Lodgment Nos. 12, 14, 16), entirely conclusory and speculative, as he

19  fails (other than with respect to Juror No. 4 discussed below), to identify what information

20  supporting his claims is available but has not been transcribed.

21      With respect to Petitioner's claim that he received constitutionally ineffective assistance

22  of counsel because defense counsel failed to request that Juror No. 12 be questioned, and

23  appellate counsel failed to raise this issue on appeal (Pet. Mem. at 30), the Magistrate Judge

24  acknowledged that Petitioner had presented such claims (see R&R at 7), but did not address

25  them, other than to conclude in the cumulative error section that: "As outlined above, there was

26  no failure by the trial court or petitioner's counsel to take appropriate action with respect to

27  potential bias as to Juror Nos. 3, 4, 12, and 15, since there is nothing to suggest actual prejudice

28  could be shown."  (R&R at 14.)  As set forth below, a determination of whether there has been

a suggestion of actual prejudice is not the proper standard applicable to ineffective assistance

of counsel claims.  In addition, the Magistrate Judge did not apply the provisions of 28 U.S.C.

§ 2254(d) to the state court adjudication of those claims.  Accordingly, the Court **SUSTAINS**

Petitioner's objection (Obj. at 1-2, 6), **DECLINES** to adopt the Magistrate Judge's findings, and

will address the ineffective assistance of counsel claims in the first instance.

Petitioner presented his ineffective assistance of counsel claims to the state trial, appellate

and supreme courts in sequential habeas petitions.  (Lodgment Nos. 12, 14, 16.)  The state trial

court found that because Petitioner had presented a claim on direct appeal regarding the failure

of the trial court to conduct an inquiry as to Juror No. 12's comments, and had raised a claim on

direct appeal alleging ineffective assistance of trial counsel for raising an untenable defense, the

trial court would not consider his ineffective assistance of counsel claims with respect to Juror

No. 12 because Petitioner had not alleged "special circumstances to warrant review of issues

considered by the appellate court."  (Lodgment No. 13.)  The state appellate court thereafter

denied the claims in an order stating: "Regarding petitioner's remaining juror contentions and

his claim that he is actually innocent, he has failed to include *any* supporting documentation,

including transcript pages he cites in the petition.  (*People v. Duvall* (1995) 9 Cal.4th 464, 474-

475.)"  (Lodgment No. 15) (emphasis in original).  Petitioner thereafter attached copies of the

referenced pages of the trial transcript to his state supreme court habeas petition when presenting

this claim.  (Lodgment No. 16.)  The state supreme court summarily denied the petition without

a statement of reasoning or citation of authority.  (Lodgment No. 17.)

Because Petitioner supported his claims in the state supreme court with the relevant trial

transcripts which were missing from his appellate court petition, which had in turn been denied

based on a failure to provide the transcript pages, and because the trial court apparently

mistakenly found that Petitioner had presented these claims on direct appeal, the Court finds that

the "look through" presumption has been rebutted, and will not look through the state supreme

court's silent denial to the lower court opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04

(1991) (holding that there is a rebuttable presumption that "[w]here there has been one reasoned

state judgment rejecting a federal claim, later unexplained orders upholding that judgment or

rejecting the same claim rest upon the same ground."); Pombrio v. Hense, 631 F.Supp.2d 1247, 1251-52 (C.D. Cal. 2009) (explaining that a Duvall citation points to a correctable defect). This Court will therefore presume that the silent denial by the state supreme court was an adjudication on the merits of the federal constitutional claims presented. See Richter, 131 S.Ct. at 784-86 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") This Court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. Id. at 786.

For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must demonstrate two things. First, he must show that counsel's performance was deficient. Strickland v. Washington, 466 U.S. 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, he must show counsel's deficient performance prejudiced the defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Id. In order to show prejudice, he must demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Both deficient performance and prejudice must be shown in order to establish constitutionally ineffective assistance of counsel. Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "The standards created by Strickland and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so." Richter, 131 S.Ct. at 788 (citations omitted). These standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. ___, 131 S.Ct. 1388, 1398 (2011). The Strickland standard also applies to claims of ineffective assistance of appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000).

Defense counsel was aware of Juror No. 12's remarks, and was aware of the trial judge's belief that it had been apparent from his demeanor throughout the trial that "he thinks this is a waste of time and he has better things to do," yet defense counsel did not request an inquiry. The state supreme court could have reasonably found that Petitioner had not overcome the strong presumption that it was a strategic choice by counsel to forgo questioning the jurors and risk giving further vent or voice to their frustrations, or further delay the trial. See Strickland, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.") Such a conclusion is bolstered by the fact that the trial court disclosed the statements to the attorneys and invited comment on a proposed course of action, but neither defense counsel, the prosecutor, nor the trial judge thought an inquiry was necessary in this instance despite the fact that, as discussed below, they all questioned Juror No. 4. See Richter, 131 S.Ct. at 791 ("Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial."), quoting Strickland, 466 U.S. at 686.

Even assuming defense counsel was deficient in failing to request an inquiry of Juror No. 12 to determine the basis or extent of his statements, or of the other jurors to determine the effect, if any, the statements may have had on them, the state supreme court could have reasonably found there was no reasonable probability that an inquiry would have resulted in a different outcome because Juror No. 12's statements indicated impatience and not potential bias. See Fields, 503 F.3d at 767 (holding that juror bias is defined as "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.")

Petitioner is not entitled to habeas relief with respect to his claim that defense counsel's failure to request an inquiry into Juror No. 12's comments constituted constitutionally ineffective assistance of counsel, because he has not shown the silent denial of the claim by the state court involved an objectively unreasonable application of Strickland or was based on an unreasonable determination of the facts. Richter, 131 S.Ct. at 786. The same is true regarding the ineffective assistance of appellate counsel claim. Id.; Robbins, 528 U.S. at 285 (holding that the Strickland standard applies to ineffective assistance of appellate counsel claims); see also Featherstone v.

1    Estelle, 948 F.2d 1497, 1507 (9th Cir. 1991) (holding that where "trial counsel's performance,

2    although not error-free, did not fall below the Strickland standard," no prejudice arose from

3    appellate counsel's failure to raise the issue on appeal.); Baumann v. United States, 692 F.2d

4    565, 572 (9th Cir. 1982) (stating that an attorney's failure to raise a meritless legal argument

5    does not constitute ineffective assistance).

6        **b)    Juror No. 3**

7        Defense counsel informed the court at the end of the fifth day of testimony that she had

8    seen Juror No. 3 shaking his head when the trial judge told the jury they were to report back the

9    next morning at 9:30 a.m.  (RT 5776.)  The trial judge did not see the gesture, but considered it

10   an understandable reaction of frustration to the delays and their unpredictable trial schedule,

11   observing that the juror had previously inquired whether their schedule would allow him to take

12   a trip to Sacramento.  (RT 5777.)  Petitioner alleges that the trial court should have questioned

13   Juror No. 3, that trial counsel was ineffective for failing to request an inquiry, and that appellate

14   counsel was ineffective for failing to raise the issue on appeal.  (Pet. Mem. at 24-27, 30.)

15       The Magistrate Judge found that a brief incident such as Juror No. 3's gesture did not

16   raise a substantial question of juror bias, particularly in light of the record regarding the jury's

17   frustration with the delayed trial process, and that the state supreme court's silent denial of the

18   claim was therefore neither contrary to, nor involved an unreasonable application of, clearly

19   established federal law.  (R&R at 8-10.)  Petitioner objects, arguing that when Juror No. 3's

20   conduct is placed in the context of the impatience and frustration displayed by the other jurors,

21   and the trial judge's strong warning to the lawyers that they were trying the patience of the court

22   and the jurors, it evinces bias.  (Obj. at 5.)  With the **MODIFICATION** that the state court

23   adjudication also did not involve an unreasonable determination of the facts, the Court **ADOPTS**

24   the Magistrate Judge's findings and conclusions and **OVERRULES** Petitioner's objections with

25   respect to his claim alleging that the trial court's failure to question Juror No. 3 violated his

26   federal constitutional rights.  (R&R at 8-10.)  Because the Magistrate Judge did not properly

27   analyze Petitioner's ineffective assistance of trial and appellate counsel claims or apply the

28   provisions of § 2254(d) to the state court adjudication of those claims, the Court **SUSTAINS**

Petitioner's Objection thereto (Obj. at 1-3, 6), **DECLINES** to adopt the Magistrate Judge's findings and conclusions in that regard, and will address the claims in the first instance.

Petitioner presented his ineffective assistance of counsel claims regarding Juror No. 3, and the remaining jurors discussed below, in his three state habeas petitions. (Lodgment Nos. 12, 14, 16.) The state trial and appellate courts found that Petitioner had failed to present sufficient evidence to support these claims, and the state supreme court denied the petition without citation of authority or a statement of reasoning. (Lodgment Nos. 13, 15, 17.) In the state supreme court, Petitioner presented copies of the transcripts which were missing from the lower court habeas petitions, in an attempt to cure the pleading defect in the lower courts. (Lodgment No. 16.) The Court will therefore not "look through" the state supreme court's silent denial to the lower court opinions, but, with respect to this and the remaining aspects of Claim 1 discussed below, will presume the state supreme court denied the constitutional claims on the merits, will "determine what arguments or theories . . . could have supported the state court's decision," and will "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. Richter, 131 S.Ct. at 784-86.

The trial court's finding that Juror No. 3's head shake was an understandable expression of frustration with the trial schedule and that no inquiry was necessary, is supported by the record and entitled to deference for the same reasons discussed above with respect to Juror No. 12's comments. Petitioner is not entitled to habeas relief with respect to his ineffective assistance of trial and appellate counsel claims with respect to Juror No. 3 for the same reasons his ineffective assistance of counsel claim with respect to Juror No. 12 fails, namely, that the state supreme court could have reasonably found that no inquiry was necessary, or that trial counsel had a strategic reason for not calling attention to the gesture. Habeas relief is **DENIED** with respect to these claims because the silent denial by the state court did not involve an objectively unreasonable application of Strickland and was not based on an unreasonable determination of the facts. Richter, 131 S.Ct. at 786; Robbins, 528 U.S. at 285; Strickland, 466 U.S. at 686-94; Featherstone, 948 F.2d at 1507.

**c)**     **Juror No. 4**

Petitioner alleges that it was improper for the trial court to allow Juror No. 4 to remain on the jury because she knew nearly all of the prosecution's law enforcement witnesses and failed to disclose that knowledge during voir dire.  (Pet. Mem. at 28-30.)  He also alleges he received ineffective assistance of counsel because trial counsel failed to request Juror No. 4 be excused, and because appellate counsel failed to present a claim regarding Juror No. 4 on appeal.  (Id. at 30.)

The Magistrate Judge found that Petitioner's federal due process and jury trial rights were not violated because the trial judge held a hearing regarding Juror No. 4's connection to the trial witnesses, and no evidence of bias was discovered, and therefore the state court's rejection of the claim that the trial court should have excused Juror No. 4 was neither contrary to nor involved an unreasonable application of clearly established federal law.  (R&R at 10-11.)  Petitioner objects to those findings, contending that the Magistrate Judge ignored the fact that Juror No. 4 was not truthful at the hearing when she said she had not previously informed the court that she knew the witnesses because she had not been asked to do so, and that the Magistrate Judge erroneously implied that Juror No. 4 knew only one or two of the witnesses in passing, whereas she had a working relationship with nearly every prosecution law enforcement witness, including the two lead investigators. (Obj. at 5-7.)  Petitioner contends that Juror No. 4 was told before, during and after voir dire, that she was to inform the court if she recognized any witness, but did not come forward until after the lead investigator informed the court that she recognized Juror No. 4.  (Id.)  Petitioner contends this shows actual bias, and argues that the juror may have been biased due to her working relationship with the witnesses even if she was unaware she was biased.  (Id.)

The record supports the Magistrate Judge's finding that an adequate hearing was held with respect to Juror No. 4, and does not support Petitioner's allegation of bias.  Immediately after the initial jury instructions, and just before opening statements, the prosecutor introduced Detective Eastep to the jury and designated her as the prosecution's investigating officer, and the court took a mid-morning break. (RT 4019.)  After the break, the prosecutor informed the

court that Detective Eastep had recognized Juror No. 4, had seen Juror No. 4 in the parking lot and locker room of the San Diego Police Department, and thought Juror No. 4 was a code compliance officer. (RT 4020.)  Although the trial judge acknowledged that he had instructed the jurors during voir dire to let the court know if they recognized any names on the witness list, he told the attorneys that in his opinion it was common for people to recognize others when they see them but not by a name. (RT 4021.)  The prosecutor then presented an opening statement, after which the trial judge again instructed the jurors to let the court know if they recognize any witnesses, and excused the jury for lunch. (RT 4023-24.)  As Juror No. 4 left for lunch, she informed the bailiff that she had recognized Detective Eastep. (RT 4025.) The trial judge asked Juror No. 4 if that would affect her ability to fairly and effectively evaluate the evidence, and she replied:

> No.  And I do want to mention that I know several of the witnesses, and it wasn't asked and I assumed that it was understood that I probably did know some of them because of where I work.  But I haven't been social with them.  I actually didn't remember what office she worked in.  I know she's a detective.  I just didn't really pay attention to what it was.  But I do know and I'm sure there will be probably some of the people from the lab or whatever that I recognize, but I don't know their names.  And I don't know them on a personal level.  But there are four or five that I do know who they are and I know them.  I mean, not – we don't do social things but I do know them. . . . But I don't feel that it would affect my ability to be impartial.  I don't know their, your know, work.  I've never talked with her about cases or, you know, really any of this kind of stuff.

(RT 4026-27.)

She was then questioned by the prosecutor and defense counsel. (RT 4027-29.)  She indicated that as a municipal code compliance officer she did not work with the criminal investigative officers who were on the witness list, and assured the court that she could remain impartial with respect to any of the other police officer witnesses she might recognize. (Id.)  The trial judge found, without objection, that she could remain on the jury. (RT 4029.)

Thus, the trial court held a hearing regarding why Juror No. 4 had not disclosed earlier that she had recognized several prosecution witnesses, allowed the parties to question her, and concluded that she could remain impartial.  Petitioner's due process and jury trial rights were adequately protected by that proceeding. Dyer, 151 F.3d at 974-75; see also id. at 973 (holding that "an honest yet mistaken answer to a voir dire question rarely amounts to a constitutional

violation; even an intentionally dishonest answer is not fatal, so long as the falsehood does not bespeak of a lack of impartiality."), citing <u>McDonough Power Equip., Inc. v. Greenwood</u>, 464 U.S. 548, 555-56 (1984).  The trial judge's finding that Juror No. 4 was not subject to removal is supported by the record and entitled to a presumption of correctness.  <u>See</u> <u>Patton</u>, 467 U.S. at 1036 ("[I]t is plainly [an issue] of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.")[4]

Petitioner's contention that the Court can presume bias from Juror No. 4's working relationship with the prosecution's peace officer witnesses is also without merit.  Although bias can be "presumed from the potential for substantial emotional involvement, adversely affecting impartiality, inherent in certain relationships," such bias should be presumed "[o]nly in 'extreme' or 'extraordinary' cases."  <u>Tinsley v. Borg</u>, 895 F.2d 520, 527 (9th Cir. 1990), quoting <u>Smith v. Phillips</u>, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring) (providing examples such as where the juror is an employee of the prosecuting agency, a close relative of one of the participants in the trial, or a witness or somehow involved in the crime); <u>see also</u> <u>United States v. Gonzalez</u>, 214 F.3d 1109, 1112 (9th Cir. 2000) ("[T]he relevant question is whether the case presents a relationship in which the potential for substantial emotional involvement, adversely affecting impartiality, is inherent.") (internal quotation marks omitted).

/ / /

---

[4] At the beginning of voir dire, the trial judge asked the jurors if anyone recognized any names on the witness list, and one of the jurors (who was then identified as Juror No. 6, but the jurors were apparently renumbered when finally seated), stated: "I think I recognized the names [of a detective and a district attorney investigator on the prosecution witness list] in my line of work."  (RT 3261.)  The juror was interrupted at that point by the trial judge, who said, "that's the sort of information we need to, ah - to know," and that they would "talk to [you]-* about that in a minute."  (Id.)  If there was a follow up on that issue with that juror it would have taken place during the recorded but untranscribed individual voir dire, which began several minutes later.  (RT 3277, 3611-13, 3620.)  To the extent that juror was Juror No. 4 (the state court record is not clear in that regard), and the attorneys did not follow up questioning her, it would explain Juror No. 4's statements quoted above that she assumed it was understood that she probably knew some of the prosecution police officer witnesses because of where she worked but "it wasn't asked."  If so, then Petitioner's allegation that Juror No. 4 never attempted to inform the court of her working relationship with the people she recognized on the prosecution's witness list is without merit.  The Court need not develop the record in that regard because, even assuming Petitioner's allegation is true, the claim still fails because an adequate hearing was held when it came to light that she knew the prosecution witnesses.

1   The Court **OVERRULES** Petitioner's objections.  With the **MODIFICATION** that the

2   state court adjudication of this claim did not involve an unreasonable determination of the facts,

3   the Court **ADOPTS** the Magistrate Judge's findings and conclusions that the state supreme

4   court's silent denial of the claim that the trial court failed to excuse Juror No. 4 was neither

5   contrary to, nor involved an unreasonable application of, clearly established federal law.  (R&R

6   at 10-11.)  Because the Magistrate Judge did not adequately address the ineffective assistance

7   of trial and appellate counsel claims with respect to Juror No. 4, or apply the provisions of

8   § 2254(d) to the state court adjudication of those claims, the Court **SUSTAINS** Petitioner's

9   Objection and **DECLINES** to adopt the Magistrate Judge's findings and conclusions.  (Obj. at

10  1-3, 6.)  The Court will address these claims in the first instance.

11  The state supreme court could have reasonably found that Petitioner had failed to show

12  deficient performance or prejudice arising from defense counsel's failure to request Juror No.

13  4 be removed from the jury, because an adequate and thorough inquiry revealed no basis for her

14  removal.  As set forth above, the parties determined that the juror worked at police headquarters,

15  and although she recognized the peace officer witnesses, they did not normally work together

16  on cases or socialize, she had not discussed casework with them, had no opinion or knowledge

17  of their work or work ethics, and assured the court that her knowledge of the witnesses would

18  not affect her ability to be fair and impartial.  (RT 4026-29.)

19  In light of the double deference this Court applies to Strickland claims, habeas relief is

20  not available with respect to Petitioner's ineffective assistance of trial and appellate counsel

21  claims because there is no indication that Juror No. 4 was subject to removal.  Richter, 131 S.Ct.

22  at 788; Pinholster, 131 S.Ct. at 1398 (holding that the Strickland and 2254(d) standards are

23  "difficult to meet" and "demands that state court decisions be given the benefit of the doubt.")

24  Habeas relief is **DENIED** with respect to these claims because the adjudication by the state

25  supreme court did not involve an objectively unreasonable application of Strickland or an

26  unreasonable determination of the facts.  Richter, 131 S.Ct. at 786; Robbins, 528 U.S. at 285;

27  Strickland, 466 U.S. at 686-94; Featherstone, 948 F.2d at 1507.

28  / / /

### d)    Juror No. 15

Petitioner alleges that an inquiry should have been made after Juror No. 15 indicated at the end of the first day of testimony that she may have recognized the prosecution's first witness, the victim's father. (Pet. Mem. at 27-28.)  He also alleges that trial counsel was ineffective for failing to request an inquiry, and that appellate counsel was deficient for failing to raise the claim on direct appeal. (Id. at 30.)  Respondent contended in the original Answer that the claim is without merit because Juror No. 15 had been excused from the jury. (Ans. Mem. at 14-15.)

The Magistrate Judge found that because Juror No. 15 had been dismissed from the jury and was not available to be questioned, the trial court had no obligation to question her, and the state supreme court's silent denial was neither contrary to, nor involved an unreasonable application of, clearly established federal law. (R&R at 13-14.)  Petitioner objects to that finding, contending that Juror No. 15 had not been excused at that time, and even if she was later excused and did not deliberate, her knowledge of the witness may have influenced the deliberating jurors. (Obj. at 3-4.)  After the Objections were filed, the Court found that the Magistrate Judge and Respondent had misread the record, and directed Respondent to amend the Answer with respect to this aspect of Claim 1. (See Order filed 5/8/14 [ECF No. 31].)

In the amended Answer, Respondent indicates that although the record is not entirely clear, it appears likely that Juror No. 15 was the third alternate juror who was eventually excused after trial and did not deliberate with the other jurors. (Memo. P&A Supp. Amended Answer at 17.)  As set forth above, two of the three alternate jurors were seated, one to take the place of Juror No. 5, who was excused because her employer would not pay for further service, and one to replace Juror No. 1, who was excused for consuming alcohol during a break.  Respondent has provided a declaration from the prosecutor stating that Juror No. 15 was indeed the third alternate, and never deliberated. (Id., Ex. 1.)  Respondent contends, however, that this Court cannot consider that declaration because under 28 U.S.C. § 2254(d) the Court is limited to the record that was before the state court. (Id. at 17.)  Nevertheless, Respondent argues that habeas relief is not available because the silent denial of the claim by the state supreme court was neither contrary to, nor involved an unreasonable application of, clearly established federal law,

because it was reasonable for the court and counsel to conclude that Juror No. 15's statement did not trigger a need to inquire, as it did not evince bias or call her impartiality into question in any way. (Id. at 16.)  Petitioner argues that Juror No. 15's statement is ambiguous regarding the extent of her knowledge of the prosecution's main witness, and a hearing to determine potential bias should have been conducted. (Pet.'s Reply at 12.)  The Court **DECLINES** to adopt the Magistrate Judge's findings and conclusions with regard to the Juror No. 15 aspect of Claim 1, and will address it in the first instance.

At the end of the day on Friday, April 11, the first day of testimony, Juror No. 15 informed the bailiff that she may have recognized the victim's father, the only witness to testify that day. (RT 633.) On Monday, April 14, just before the mid-morning recess, defense counsel stated, with respect to Juror No. 15, that: "I did not know if we might at some time inquire.  I thought maybe we forgot." (RT 4185.)  The trial judge replied:  "I didn't see a need to inquire and you didn't ask, so he's [sic] gone." (RT 4185.)  After the mid-morning recess and before reconvening with the jury, the following exchange took place:

| | |
|---|---|
| The Court: | Let me -- I didn't mean to brush you off completely, but I understood Juror No. 15 to say that she thought she may recognize the father.  And I didn't – I myself particularly didn't see any particular need to talk to the juror about that but you can at some point if you want to.  That was my understanding, that it was sort of a vague – she may recognize the father, but I understood it was – she wasn't at all certain about that and I didn't pursue it at the time.  [¶]  Not now but some appropriate time if you want – |
| Defense Counsel: | Your Honor, I didn't know what the note said.  We did it as we were leaving on Friday.  If it says may, I prefer not to draw attention to it, but I thought – |
| The Court: | That was my feeling, yes.  I think it was he [sic] had. |
| The Bailiff: | Yes, your Honor.  She said she just may.  She was really vague.  She said she may recognize him – |
| The Court: | Well, I sort of had that same feeling. |
| Defense Counsel: | I just didn't know what the issue was, and I thought we had talked about it on Friday.  That's the only reason. |

(RT 4186-87.)

No party requested an inquiry and none was made regarding Juror No. 15. The state supreme court could have reasonably found that Petitioner's federal constitutional rights were not violated by the failure of the trial judge to inquire because the juror was not even sure that she recognized the witness. See Fields, 503 F.3d at 767 (holding that juror bias is defined as "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.") The state supreme court could also have reasonably found that Petitioner did not overcome the strong presumption that it was a strategic choice by defense counsel to "prefer not to draw attention" to the juror's statement. See Strickland, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.") The state supreme court could also have reasonably found that Petitioner was not prejudiced by defense counsel's decision not to seek to inquire, or appellate counsel's failure to raise the issue on appeal, because there is no indication in the record that there was a need to inquire into Juror No. 15's possible recognition of the witness. See Dyer, 151 F.3d at 974-75 (holding that a state court finding that no inquiry was necessary is entitled to deference as long as the parties were represented, the investigation was "reasonably calculated to resolve the doubts raised about the juror's impartiality," and the state court fact-finding process was "objective and reasonably explore[d] the issues presented.") Petitioner has therefore not shown the silent denial of his ineffective assistance of counsel claims by the state supreme court involved an objectively unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. Richter, 131 S.Ct. at 786; Robbins, 528 U.S. at 285; Strickland, 466 U.S. at 686-94; Dyer, 151 F.3d at 974-75; Featherstone, 948 F.2d at 1507.

### e) Cumulative error

In the final aspect of Claim 1, Petitioner alleges that a combination of the failure to inquire into the open displays of frustration and animosity by Juror Nos. 3 and 12, the failure to inquire into Juror No. 15's possible recognition of the victim's father, and allowing Juror No. 4 to remain on the jury, violated his constitutional right to a fair and impartial jury. (Pet. Mem. at 30.) The Magistrate Judge found that "where no error of constitutional magnitude occurred,

cumulative prejudice is not possible." (R&R at 14.)  However, "[t]he cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." Parle v. Runnels, 505 F.3d 992, 927 (9th Cir. 2007), citing Chambers v. Mississippi, 410 U.S. 284, 290 n.3 (1973).  Because the Magistrate Judge applied an incorrect legal standard and did not apply the provisions of 28 U.S.C. § 2254(d) to the state court adjudication of this claim, the Court **DECLINES** to adopt the findings and conclusion of the Magistrate Judge with respect to this claim, and will address it in the first instance.

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair." Parle, 505 F.3d at 927, citing Chambers, 410 U.S. at 298.  Where no single trial error in isolation is sufficiently prejudicial to warrant habeas relief, "the cumulative effect of multiple errors may still prejudice a defendant." United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996). Where "there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant." Id., quoting United States v. Wallace, 848 F.2d 1464, 1476 (9th Cir. 1988).  "Where the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors." Frederick, 78 F.3d at 1381.

This is not a case where the prosecution's case was weak.  As the Magistrate Judge found, there was substantial evidence of Petitioner's guilt, including physical evidence and eyewitness testimony, including the victim's. (R&R at 23-24.)  The state appellate court characterized the evidence against Petitioner as "overwhelming."  (Lodgment No. 9, People v. Dang, No. D053687, slip op. at 34.)  In light of the strong evidence of guilt, even assuming trial errors not rising to the level of a federal due process violation occurred in connection to determining juror bias, it is unlikely Petitioner could have been prejudiced by the accumulation of any errors which individually did not rise to the level of a federal due process violation. Frederick, 78 F.3d at 1381; see Hendrix, 549 F.2d at 1227 ("If only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an

impartial panel.")  The record supports a finding that the jurors were impatient that the trial lasted nearly three times as long as they were told it would, and the record does not support a finding of bias or impartiality of any juror.  The Court denies habeas relief as to this aspect of Claim 1 on the basis that the state supreme court could have reasonably determined that Petitioner had failed to demonstrate there were any juror errors to accumulate.  The state court could also have reasonably determined that the cumulative effect of the alleged errors, assuming any occurred, did not result in a denial of his federal constitutional rights.  The state supreme court's silent denial of this claim is therefore neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  Richter, 131 S.Ct. at 786; Andrade, 538 U.S. at 75-76.

**2.     Claims 2-3**

The Court **ADOPTS** the findings and conclusions of the Magistrate Judge with respect to Claims 2-3 with the following **MODIFICATION**.  The Court finds that the Magistrate Judge correctly determined that the state appellate court opinion rejecting these claims was neither contrary to nor involved an unreasonable application of clearly established federal law.  (R&R at 14-24.)  The Court additionally finds that the state appellate court's opinion was not based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(2).  Habeas relief is **DENIED** as to Claims 3-4 on that basis for the reasons set forth in the R&R.

**3.     Claim 4**

In his final claim, Petitioner alleges he is actually innocent of counts 1, 2, 5, 7, 9, 11, 13, 15 and 17, which involve sexual offenses with "a child who is 10 years of age or younger."  (Pet. at 9, 47-48.)  He contends the child victim was over 10 years of age when the offenses occurred, because she was 10 years and 5 months old, and therefore he is legally innocent of those counts.  (Id.)  He also alleges it was prejudicial error for his appellate counsel not to raise this issue on direct appeal.  (Id. at 48.)

Respondent contends that it remains an open question whether a freestanding actual innocence claim is cognizable on federal habeas, and therefore the state court denial of the claim could not be contrary to, or involve an unreasonable application of, clearly established federal

1   law. (Ans. Mem. at 19.) Alternately, Respondent argues that Petitioner's claim is one of legal

2   innocence, rather than factual innocence, and therefore not a proper actual innocence claim, and

3   in any case relies on an untenable interpretation of California law. (Id. at 20-21.)

4   Petitioner presented this claim to the state appellate court in a habeas petition. (Lodgment

5   No. 14 at 27-28.) That petition was denied by an order which stated:

6

7   Regarding petitioner's remaining juror contentions and his claim that he is actually innocent, he has failed to include any supporting documentation, including transcript pages he cites in the petition. (*People v. Duvall* (1995) 9 Cal.4th 464, 474-475.)

8

9   (Lodgment No. 15, In re Dang, No. D060645, order at 1-2.)

10  He then presented the same claim in the exact same manner to the state supreme court in

11  a habeas petition, with the addition that he attached the transcript pages cited in the appellate

12  court petition in support of the claim. (Lodgment No. 16 at 27-28.) The state supreme court

13  summarily denied the petition without citation of authority. (Lodgment No. 17.) Because

14  Petitioner apparently cured the defect found by the appellate court, this Court will not look

15  though the silent denial by the state supreme court, and, in applying the provisions of 28 U.S.C.

16  § 2254(d), will "determine what arguments or theories . . . could have supported the state court's

17  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

18  arguments or theories are inconsistent with the holding in a prior decision of" the Supreme

19  Court. Richter, 131 S.Ct. at 784-86

20  The Magistrate Judge found that Petitioner's actual innocence claim is not cognizable on

21  federal habeas because it is merely an attempt to transform a state law issue into a federal due

22  process claim, and that in any case the California Supreme Court has interpreted the relevant

23  statutes as including children, like the victim here, who have reached their 10th birthday but have

24  not yet reached their 11th birthday. (R&R at 25.) The Court **DECLINES** to adopt the findings

25  and conclusions of the Magistrate Judge with respect to Claim 4 because the Magistrate Judge

26  applied an incorrect legal standard, did not apply the provisions of 28 U.S.C. § 2254(d) to the

27  state court adjudication of this claim, and did not address Petitioner's ineffective assistance of

28  appellate counsel claim.

Respondent argues that a showing of legal innocence is insufficient to demonstrate actual innocence under Schlup v. Delo, 513 U.S. 298, 316 (1995) (holding that a claim of actual innocence requires a presentation of "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.")  The Ninth Circuit recently found, however, that a federal habeas petitioner can make a showing of legal innocence, as opposed to factual innocence, which satisfies the Schlup actual innocence gateway to avoid a procedural default. Vosgien v. Persson, 742 F.3d 1131, 1135-36 (9th Cir. 2014) ("One way a petitioner can demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a legal matter, have committed the alleged crime."), citing Bousley v. United States, 523 U.S. 614, 623-24 (1998).  Respondent is correct, however, that it is an open question whether a freestanding claim of actual innocence, as opposed to its use as a gateway to avoid a procedural default, is cognizable on federal habeas.  See Jones v. Taylor, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceedings in the non-capital context, although we have assumed that such a claim is viable."), citing McQuiggin v. Perkins, 569 U.S. ___, 133 S.Ct. 1924, 1931 (2013) (noting that it is, as yet, unresolved whether a freestanding actual innocence claim is cognizable on federal habeas) and Herrera v. Collins, 506 U.S. 390, 417 (1993) (acknowledging the possibility that a freestanding actual innocence claim would exist in the capital context).  The Jones Court did not resolve the issue, finding that the petitioner had not made a sufficient showing of actual innocence.  Jones, 763 F.3d at 1246.

This Court need not resolve the issue either, and need not address Respondent's assertion that the failure of the Supreme Court to resolve the issue means there is no clearly established federal law which the state court could have unreasonably applied.  Petitioner's interpretation of state law is incorrect.  Rather, because his victim was less than 11 years old at the time of the offenses, Petitioner is not legally innocent of offenses with a child 10 years of age or younger. (R&R at 25, citing People v. Cornett, 53 Cal.4th 1261, 1275 (2012) ("We are persuaded here that our Legislature intended '10 years of age or younger' as used in section 288.7 to be another means of saying 'under 11 year of age' in accordance with the ordinary understanding of

'age.'".) Federal courts "are bound by a state court's construction of its own penal statutes." Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993); Bradshaw, 546 U.S. at 76, citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") This Court must defer to the state court's construction unless it is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation." Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).

Petitioner has not established that the state supreme court's silent adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Habeas relief is **DENIED** as to the actual innocence aspect of Claim 4 on that basis. Petitioner's allegation that his appellate counsel provided constitutionally inadequate assistance in failing to present the actual innocence claim on direct appeal is similarly without merit, and habeas relief is **DENIED** as to that aspect of Claim 4. Richter, 131 S.Ct. at 786; Robbins, 528 U.S. at 285; Strickland, 466 U.S. at 686-94; Featherstone, 948 F.2d at 1507.

**4.      Conclusion and Order**

The Court **ADOPTS IN PART AS MODIFIED** and **DECLINES TO ADOPT IN PART** the findings and conclusions of the Magistrate Judge, and **SUSTAINS IN PART** and **OVERRULES IN PART** Petitioner's Objections thereto, as set forth above. The Petition for a Writ of Habeas Corpus is **DENIED**. The Court **ISSUES** a Certificate of Appealability limited to Claim 1 presented in the Petition.

The Clerk of Court shall enter judgment denying the Petition and issuing a Certificate of Appealability limited to Claim 1 of the Petition.

**IT IS SO ORDERED.**

DATED: March 2, 2015       _____

**BARRY TED MOSKOWITZ**
United States District Judge